THE PEOPLE v. CALERO ET AL.

APPEAL from the District Court of Aguadilla.

No. 378.—Decided February 12, 1912.

</div>

PENAL LAW—ASSAULT WITH INTENT TO COMMIT MURDER—CIRCUMSTANCES NECESSARY TO CONSTITUTE CRIME—PREMEDITATION.—In an information for the crime of assault with intent to commit murder it is not necessary to charge premeditation nor any of the elements necessary to define the crime.

ID.—INSTRUCTIONS OF JUDGE TO JURY—EXAMINATION OF EVIDENCE.—On examining the instructions given by the judge to the jury in regard to the evidence introduced in the case the Supreme Court held that the court below interpreted the evidence correctly and that the instructions conformed to the law.

ID.—SLIGHT ERRORS—REVERSAL OF JUDGMENT.—It is a rule generally accepted that slight errors not affecting the result of the trial are not sufficient upon which to base a reversal of the judgment.

ID.—ERRORS OF PROCEDURE—OVERWHELMING PROOF OF DEFENDANT'S GUILT.—It is a principle accepted by this court and which has been embodied in our statute that errors of procedure committed during the progress of the trial will not produce a reversal of a judgment, where the evidence shows overwhelming proof of defendant's guilt and the conclusion is inevitable that the verdict could not have been otherwise than that of guilty even if none of the errors assigned had been committed.

The facts are stated in the opinion.

Messrs. *José de Diego* and *Juan B. Soto* for appellant.

Mr. *Charles E. Foote, fiscal,* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This prosecution was begun before the District Court of Aguadilla by an information presented by the *fiscal* of that district charging the accused, Francisco Calero and Juan Calero, with the offense of assault with intent to commit murder; alleging that upon one of the days of the month of January in the year 1911 and in Aguadilla the defendants maliciously, criminally and treacherously attacked with knives Eugenio Chacón, causing him various wounds, with the intention of committing murder. The defendants upon arraignment denied the accusation and a trial was held before a jury which, after hearing the evidence, the argument of counsel and the instructions of the court, declared the accused guilty of the crime of assault with intent to commit murder. And in accordance with said verdict each one of the defendants was sentenced by the court to the punishment of five years' imprisonment in the penitentiary at hard labor and to the payment of the costs. From this judgment the accused took an appeal to this court and sent up a record containing the judgment roll with the instructions given by the court to the jury and a statement of the case, in which appears all the testimony given by the witnesses either in behalf of the prosecution or of the defense. Both the appellants and the respondent filed written briefs herein and the cause was argued orally before this court at the hearing by distinguished counsel, other than those who signed the briefs, who had not taken part in the trial in the court below.

In the appellants' brief two assignments of error are specified:

1. That the court erred in weighing the evidence in that it was affirmed with absolute certainty, in the instructions given to the jury, that the witnesses for the defense knew nothing in regard to the facts because neither of them was present at the ball at which Eugenio Chacón was wounded.

2. That the court in its charge affirmed emphatically that when Eugenio Chacón raised his stick, upon being caught by

the arm by Francisco Calero, he did so with the object of defending himself, believing that Calero would not be satisfied with holding him grasped by the arm, but that on the contrary this act would be the beginning of a serious aggression.

Upon the oral argument in this court counsel for appellants rests his case upon two points: First, that the information is insufficient; and second, that the court below erred in the charge given to the jury by expressing an opinion upon the evidence and by misstating the evidence presented on the trial. We will endeavor to combine the specification of errors in appellants' brief with the points made by counsel in the oral argument before this court at the hearing.

1. Then let us consider whether or not the information is sufficient. It reads in the body thereof as follows:

"The *fiscal* presents an information against Francisco Calero and Juan Calero for an attempt to kill (felony), committed in the following manner: The said Francisco Calero and Juan Calero, in Aguadilla, within the judicial district of Aguadilla, P. R., on one of the days of the month of January, 1911, and in a malicious, criminal, and treacherous manner, and being armed with knives, committed an assault upon Eugenio Chacón with intent to commit murder, causing him several wounds."

The objection to this information is that it does not set out the circumstances which are necessary to define the crime of murder and especially that it failed to charge premeditation, although premeditation is a necessary ingredient in murder. Upon an information for that crime it should certainly be alleged, still this is not necessary in an accusation of assault with intent to commit murder, it being sufficient that the information in such a case should comply with the statute and follow the same substantially. This has been decided by the Supreme Court of California in two cases charging assault with intent to ravish. See *The People* v. *Girr,* 53 Cal., 629, and *The People* v. *Gibson,* 53 Cal., 601. Then, following the California cases, we must hold the information in this case to be amply sufficient.

2. Now let us consider whether or not the charge of the court, as given to the jury, complies with the law and if it is in accordance with our statute. An act was passed by the present Legislature amending paragraph 8 of section 233 of the Code of Criminal Procedure, to conclude as follows:

"Then the judge, in open court and in the presence of the parties and counsel, will sum up the case to the jury, omitting all superfluous circumstances, pointing out wherein the main question and principal issues lie, stating what evidence has been given to support them, with such remarks as he thinks necessary for their direction, and giving them his opinion solely in matters of law arising upon that evidence."

This statute is merely declaratory of the law as it has existed in Porto Rico since the American occupation or at least since the adoption of the present Code of Criminal Procedure. We must accordingly examine the charge delivered by the court to the jury to ascertain whether or not it is in accordance with this statute. Objections are made by the appellants to this charge because, as it is alleged, the court erred in weighing the evidence and in expressing an opinion thereon. The court certainly had the right and it was its duty to sum up the case to the jury—that is to say, to give them a summary of the evidence omitting all superfluous circumstances. And, moreover, it was the duty of the court to point out the main questions involved in the prosecution and the principal issues presented therein, stating the evidence which had been given to support them and to add thereto such remarks as the judge might think necessary for the direction of the jury, at the same time giving them his opinion solely in matters of law arising upon the evidence produced by either side at the trial. Was this done on the trial?

It is said on behalf of the appellants, in criticising the instructions, that the judge in charging the jury positively affirmed that the witnesses for the defense knew absolutely nothing in regard to the facts, since neither of them was present at the ball where Chacón was wounded.

The evidence shows that the witnesses for the defense, at least one or two of them, were present at the ball, but it was after the affray in which the wounds were inflicted upon Chacón was over. It seems that these witnesses arrived late and that they were in the yard (*batey*) of the house during most of the time and that they spoke with Juan Calero there. When they went into the ballroom the disturbance had ceased and Chacón was already suffering from his wounds; for two of the witnesses stated that they saw Chacón wounded. This is all probably true, but it goes to show that the court correctly stated the testimony when it said that the winesses for the defense—meaning the three named, to wit, José Santiago, Francisco Montalvo and Juan Batillo—were not present at the ball where Chacón received his wounds. And we may remark that if they were present at the ball *where* the wounds were received they were not present *when* the wounds were received, and hence this slight discrepancy in stating the evidence was immaterial.

It seems that it was the object of the defense in introducing the testimony of these three witnesses to prove an alibi on the part of Juan Calero, by showing that he was in the yard of the house and not in the ballroom, at the time of the assault. But the evidence is all consistent in affirming that he was in the ballroom at the time of the affray and that he inflicted at least one of the wounds upon Chacón and broke his knife in doing so, at the same time expressing his regret that the knife had been broken and declaring that he would have killed his victim if the knife had proved sufficient.

3. It is further claimed that the court erred in suggesting that Chacón probably acted in self-defense and made a mistake in stating the evidence in regard to this point. It is said that the court affirmed emphatically that when Chacón raised his stick (*varilla*) upon being caught by the arm by Francisco Calero he did so with the purpose of defending himself, believing that Calero did not intend, when catching him by the

arm, merely to grasp him, but, on the contrary, that this act was the beginning of a serious assault.

The court really instructed the jury in regard to this matter as follows:

"But what has been finally testified by Francisco Calero that may justify the points alleged by the defense? I think that the jury was paying great attention while Francisco Calero was testifying, and, therefore, all the details of his statement can be remembered by them. Calero himself testified that although it is true that Eugenio Chacón was armed with an iron stick, the latter, however, did not assault him with said stick. Francisco Calero was the person who assaulted Eugenio Chacón and who states in his own testimony that he came up and caught Chacón by one arm. The fact that a man holds another man by the arm in a violent manner without cause or motive therefor constitutes a simple assault; and when this occurred, as stated by Calero, Eugenio Chacón raised his stick to defend himself believing that Francisco Calero would not have been satisfied by merely holding him by the arm, but that such act may have been the first attempt in a serious assault and battery."

We believe the court correctly interpreted the evidence in regard to this matter and explained to the jury the use that Chacón made of the umbrella handle which he carried in his hand and which is denominated a stick (*varilla*) in the testimony. At any rate no assault was made by Chacón on Francisco Calero, as the latter himself testified, and if the statement of the evidence in regard to this matter was not strictly correct, the error of the court in summing it up was very slight and altogether immaterial.

Finally, we glean from the record that the defenses made by the two defendants were distinct and entirely different: Francisco Calero relies for his acquittal upon the claim that although he inflicted the wounds, or some of them, upon Eugenio Chacón, that he did so in self-defense. Juan Calero contends that he was not present at the affray and relies upon an alibi having attempted to prove that he was in the dooryard of the house where the ball occurred when Eugenio Chacón received the wounds on which this information is founded.

On a careful review of the record we are convinced that neither of these defenses was sustained by the evidence adduced on the trial. Moreover, if any error has been committed in this case, it does not go to the foundation of the charge made against the defendants. Slight errors not affecting the result of the trial are not sufficient to require a reversal of the judgment.

It has been decided by the Supreme Court of Illinois that it will not reverse a judgment of conviction, even in a murder case, where the evidence shows overwhelming proof of defendant's guilt unless it could say that upon competent evidence there might arise a doubt of the guilt of the accused; and further, that the judgment should be affirmed if the conclusion is inevitable that the verdict could not have been otherwise than guilty even if none of the errors assigned had been committed. *People* v. *Cleminson*, 250 Ill., 135, 95 N. E., 157. Dr. Wigmore, in approval of this decision of the court says: "This opinion reaches the high-water mark of modern aspirations in its treatment of procedural technicalities." VI Ill., Law Rev., 4, p. 267.

This announcement of a principle and a rule of appellate procedure, which has been embodied in a statute in Porto Rico, meets our entire approbation. See Special Session Acts of 1904, p. 10; Act of May 30, 1904.

Upon a thorough review and careful study of the facts developed in this case and the law applicable thereto, we are clearly of the opinion that the appellants were guilty of the crime of which they were accused and that the trial court reached a proper decision and rendered a correct judgment herein, and the same should be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices del Toro and Aldrey concurred.

Mr. Justice Wolf took no part in the decision of this case.